SEIBERT CYLINDER OIL-CUP CO. *v.* MICHIGAN LUBRICATOR CO.

SAME *v.* GRACE *et al.*

(*Circuit Court, E. D. Michigan.* February 8, 1888.)

PATENTS FOR INVENTION—APPLICATION FOR INJUNCTION—SUSTAINED PATENT—EVIDENCE TO OVERTHROW PRESUMPTION OF VALIDITY.

Upon an application for a preliminary injunction in an action for infringement of a patent, the validity of which has been sustained in three former suits, defendant, a witness and party in one of the former suits, corroborated by one other witness, testified that a machine identical with the one used by him was perfected and in use more than two years prior to the issuance of plaintiff's patent, but admitted that he did not apply for a patent for more than nine years after perfecting his invention, and the evidence tended to show that the invention as patented by him differed essentially from the one originally used. *Held*, that this testimony not having been introduced in the former suits, does not establish prior invention and use beyond a reasonable doubt, so as to overcome the presumption arising from the issuance of plaintiff's patent, supported by three adjudications in his favor.

In Equity. On motion to dissolve an injunction, and motion for injunction.

On motions for injunctions under the Gates "Sight-Feed Lubricator Patent, No. 138,243, of April 29, 1873. An interference proceeding was had in the patent-office, in 1880, between Parshall and others, who are strangers to these suits. The record in the interference proceeding was stipulated into the case of *Oil-Cup Co.* v. *Lubricator Co.*, 10 Fed. Rep. 677, in which the patent was sustained on final hearing. Subsequently, new defenses having arisen, a suit was commenced under this patent against William Burlingame, the agent of the Detroit Lubricator Co., and counter-suits were commenced by the Detroit Lubricator Co., against the vendees of the complainant. The prior proceedings in the patent-office and in the *Phillips Case* were stipulated into this *Burlingame Case*. Parshall was again examined, and his alleged anticipation further inquired into. This case was argued at length, and taken under advisement, and, having been held under advisement for seven months, was settled,

the settlement involving a consent decree sustaining the Gates patent. Subsequently complainant commenced suit against Nightingale. All the prior proceedings and proof were stipulated into this case, and on final hearing the patent was sustained. *Vide*, 32 Fed. Rep. 171. On the strength of these cases suit was begun, and on motion, an injunction *pendente lite* was issued November 27, 1887, as to the Michigan Lubricator Co., and subsequently a motion was made and presented, and is now re-presented, for an injunction *pendente lite* as to Grace and Parshall. The defendants here relied upon affidavits to establish the *public use and sale* for more than two years prior to the date of the application for the Gates patent, of lubricators made and sold by defendant Parshall which, it is alleged, involved the patentable subject-matter of the Gates patent. Parshall took out a patent involving the subject-matter of this controversy, in 1879. Defendants' contention is that the testimony establishing the statutory defense of prior *public use* and sale by *Parshall* in 1869 has, in the prior proceedings, been suppressed, for the reasons that, if developed, not only would the Gates patent be defeated, but also that the Parshall patent of 1879 would be defeated, but that now, priority of invention having been established in favor of Gates, Parshall for the first time presents the testimony as to the *public use and sale* of his device in 1869.

*C. J. Hunt, J. H. Raymond,* and *Edmund Wetmore,* for complainant.
*John B. Corliss* and *Rodney Mason,* for Michigan Lubricator Co.
*Wells W. Leggett,* for Grace and Parshall.

JACKSON, J., (*orally after stating the facts as above.*) From the facts that have been presented in the preceding adjudications, and also in this new evidence, the difficulty grows, of course, out of the facts, if they be facts, connected with Baugh's use of the machine in 1869–1870. It is perfectly clear that under these previous adjudications,—the *Phillips Case,* the *Burlingame Case,* and the *Nightingale Case,*—the plaintiffs, on the original applications, presented to the court a *prima facie* case,—a clear *prima facie* case, which warranted the issuance of the preliminary injunction. They had the presumption growing out of the issuance of the patent on the 29th of April, 1873, in favor of Gates, and that presumption has been supported by three adjudications. It is true that in the *Phillips Case* all the questions were not presented that could have been presented, or that were presented in the subsequent litigation. We come now to the *Burlingame Case,* in which Mr. Parshall is called as a witness. In that case Mr. Parshall testifies, and so does Mr. Willetts, the pattern maker, that they used two of the machines of the character indicated in the exhibit to his testimony in that case, and in the form designated by a model now before the court. Those two machines were used, one at the copper-works and the other at the Champion flour-mills. It is perfectly clear, under the statements of the witnesses themselves in that case, that the courts were justified in arriving at the conclusion that machines thus introduced at the Champion mills and at the copper-works were imperfect and defective, and were not a completed invention. I

think the court reasonably reached a proper conclusion, and we will not review that now. They had the facts before them, and Mr. Parshall, the alleged original inventor was before them, and he testified to the use of the machines in those two instances. Now, if human testimony is to be credited, Willetts and Parshall both identified the machines that they made in 1869 as corresponding identically with the machine here presented, and which was tested at the copper-works and at the Champion mills. Mr. Baugh says,—and the difficulty arises on Mr. Baugh's testimony,—Mr. Baugh says that was not the machine he used, at least not in that form. Mr. Baugh identifies the form of a different machine corresponding with a photograph now presented, and which the proof indicates, from Mr. Parshall's own statements, previously made, was made at a later period than 1869.

Now, what was Parshall engaged in, and what are the probabilities? When we come to consider evidence, we must consider probabilities. Mr. Parshall was engaged in an effort to invent a lubricator that would do its work, and conform to the needs of the business and of the trade. He was engaged in the effort to invent an up-drop lubricator, and we have him, according to the testimony of Mr. Baugh, now introduced, as having perfected that sort of a machine in June, 1869, and yet we find Mr. Parshall postponing an application, although an inventor, and engaged in the effort at inventing and discovering that want,—we find him failing to make any application for an up-drop lubricator until 1878. Now, is it not probable that Mr. Parshall must have known more about this than any other living man? Is it probable that, if he had had a completed invention or a thing that performed its work as efficiently as it is now alleged that the plaintiff's does he would have postponed his application for a patent upon that invention until 1878, when he presented a different instrument. The probabilties are against that theory. Matters of importance are not conducted in that way. Inventors do not act in that way. If Mr. Parshall had in 1869 what is now claimed, Mr. Parshall would undoubtedly have applied for a patent for it. The probabilities from Mr. Parshall's conduct, and the probabilities from Mr. Parshall's previous testimony, are all very decidedly in favor of the fact that Mr. Baugh is in some way mistaken as to what he had or as to the date at which he had it.

Now, in addition to that, the abandonment by Parshall is some evidence of an incomplete instrument. Looking at him in his situation as an inventor engaged in an effort to make a machine that would work, the abandonment of the Baugh machine is evidence, and strongly persuasive evidence, of some incompleteness in the machine itself, such as was found by Judge LOWELL and by Judge COLT in the preceding cases, in which they found that the machine as used at the copper-works and at the Champion mills was a defective and incomplete machine. We have this strong *prima facie* case besides the presumption of the patent, and in view of the decisions we are not satisfied that Mr. Baugh's evidence breaks down that strong *prima facie* case. We will, therefore, allow the injunction to stand.

As to laches, I ought to say that we do not think that laches can be attributed to the complainant in this case, under the facts surrounding it. Parties are not required to litigate at all points at the same time. They may give notice to an infringer that he is infringing, and from that time forward no acquiescence will be presumed, provided the suit is instituted within a reasonable time. There are cases under the general equitable doctrine that after notice of a superior right a party who proceeds proceeds at his peril, and can acquire no benefits thereafter as against the party who has given notice of his superior right. We think the doctrine of laches has no foundation in this case. The facts fail to break down, we think, the strong *prima facie* case made on behalf of the complainant. So we continue the injunction in the case against the Michigan Lubricator Co. and order an injunction to issue in the case against Grace and Parshall.

BROWN, J., (*orally.*) I am very glad to have had the assistance of the circuit judge in this case, as it seems to me a very close one, and I should have hesitated to take the responsibility of continuing this injunction, if I had not been advised by him upon this hearing. While I am not free from doubt with regard to the case, I think, upon the whole, the defendants have not established an anticipation of this patent beyond a reasonable doubt. I should not be surprised that, if this case were further heard, it might resolve itself into something like a question of law. While if the affidavits produced on behalf of the defendants here are taken broadly for their face value, the anticipation would be proven, I think that we should look upon them with a good deal of suspicion. The defense really is that Mr. Parshall made certain machines in 1869 anticipatory of this device, and his testimony seems so to indicate this. The reply is virtually that these machines were not operative, and so Judge LOWELL found with regard to the Champion mills and the copper-works machine,—that they burst and were not operative devices. The testimony of Mr. Baugh would tend to show that the machine which was put into his mill was an operative device, but in reply to that it may be said that Mr. Parshall, who is engaged in the patent business, who is an inventor by profession, and who has shown himself very alert to secure patents for his own benefit, had not sufficient confidence in this machine to induce him to apply for a patent for it until 1878. Now, we have to consider too, in this connection, the fact that when Parshall was examined as a witness in the other cases, and in his interference in the patent-office, he never set up any of these machines except those which were sold to the Champion mills and to the copper-works, and no allusion is made in his testimony to the other machines upon which reliance is placed in this case. His excuse is, as I understand, that the glass was not good enough, was not strong enough, to make the machine operative; that while the same thing would have been operative upon a low pressure engine, the extra pressure of the steam in the high pressure engine burst the glass, and rendered the machine inoperative,—that is, when used upon that class of engines. His explanation amounts to this: that

there was no defect in the construction of the machine, but merely in the strength of the glass. Now, that may be a question of law. It comes pretty near being a question of law, whether a machine can be said to anticipate another machine which is not operative, when its inoperativeness is caused by reason of not employing sufficiently strong material. We have the testimony of Mr. Parshall that he made three machines like the exhibit in the *Burlingame Case*, now produced, and no mention is made of other devices which are alleged to have been made about the same time. The testimony of Mr. Baugh indicates that his was not the one that was used, but a device with a smaller glass. That tends to throw, in my mind, a good deal of doubt upon his whole testimony, and I find it impossible to reconcile the testimony of Mr. Parshall and Mr. Baugh. Was his a machine which Mr. Parshall made? Mr. Baugh says it was. Mr. Parshall said he had but one set of patterns. There is a mystery here I do not understand, and in reply I can only say that I do not think there is any equity here which calls upon us to dissolve this injunction. Here is a machine for which Mr. Gates obtained a patent in 1873, and they have been making that machine year after year for 14 or 15 years. I think when a party comes in at this late day and sets up practically a new defense to this patent, that he ought to establish it beyond a reasonable doubt. I think that the equities of this case are entirely with the complainant. Of course, we cannot anticipate what developments may be made when these witnesses come to be examined and cross-examined, but upon the whole my own conclusion is, although, I confess, not without some doubt, that the injunction ought to be continued.